𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

SOUTHERN RAILWAY COMPANY v. UNITED STATES
CASUALTY COMPANY.

June 14, 1923.

1. MASTER AND SERVANT—*Workmen's Compensation Act—Subrogation of
   Employer to Employees' Claim for Damages for Personal Injuries.*—
   Under section 12, in the original workmen's compensation act (Acts
   1918, page 640), the employee to whom compensation was paid for
   personal injuries was debarred from pursuing all other rights and
   remedies on account of such injuries. Under this section, however,
   in the amendatory act (Acts 1920, page 256, section 12) it is clear
   that, upon the making of a lawful claim by the employee against his
   employer, the employer, by operation of law, becomes the assignee
   of any right to recover damages which the injured employee, or his
   personal representative, may have against any other party for such
   injury or death; and such employer is subrogated to such right of his
   employee and may enforce the same in his own name, or in the name
   of the employee.

2. MASTER AND SERVANT—*Workmen's Compensation Act—Subrogation of
   Insurance Carrier to Rights of Employer.*—Section 12 of the workmen's
   compensation act, as amended, after providing. for subrogation of
   insurance carrier, further provides that nothing therein should be
   construed as conferring upon insurance carriers any other or further
   rights than those existing in the employer at the time of the injury
   to his employee, anything in the policy of insurance to the contrary
   notwithstanding. It was contended in the instant case that at the
   time of the injury to the employee, the employer had no right to
   assert, as that right was not called into being until the employee had
   made claim for compensation, and therefore the insurance carrier,
   plaintiff in the instant case, had no right vested in him by the statute
   which subrogated him to "all the rights and duties of the employer"
   an d not the employee.

   *Held:* That there was no merit in this contention. If the construction
   contended for was adopted, the result would be to practically annul
   that portion of the statute which was clearly intended to give relief,
   by subrogation, to insurance carriers.

3. MASTER AND SERVANT—*Workmen's Compensation Act—Subrogation of
   Insurance Carrier to Rights of Employer.*—When the entire statute

(the workmen's compensation act, as amended, Acts 1920, page 256) is read as a whole, it is clear that the provision that nothing therein should be construed "as conferring upon insurance carriers any other or further rights than those existing in the employer at the time of the injury to his employee, anything in the policy of insurance to the contrary notwithstanding," was simply intended to limit the insurance carrier to its subrogated rights formerly vested in the employer, irrespective of any provision of the policy of insurance, which might seem to give to such carrier any other or further rights.

4. STATUTES—*Amendment—Amendment Construed to Mean Something.*—An amendment to a statute should always be construed to mean something, rather than nothing.

5. MASTER AND SERVANT—*Workmen's Compensation Act—Subrogation of Employer and Insurance Carrier to Rights of Employee.*—Under section 12, workmen's compensation act (Acts 1920, page 256), at the time of the injury to the employee, the employer has the right, upon the making of a lawful claim by the employee against the employer for compensation under the act, to recover such damages as the injured employee might recover against any other party for such injury. Upon the making of such claim, the employer's rights, as assignee of the employee, relate back and are the same as those of the employee at the time of the injury, and to these rights the insurance carrier is subrogated.

6. FORMER ADJUDICATION OR RES ADJUDICATA—*Workmen's Compensation Act—Suit by Employer as Bar to Suit by Insurance Company.*—In the instant case an employee was injured in an automobile collision with an engine of defendant railroad. The employee elected to accept the benefits of the workmen's compensation act, and subsequently his employer instituted suit against the defendant railroad to recover damages done by the collision to his automobile and other property.. This suit was decided adversely to the employer, and in the instant case a suit against defendant railroad by plaintiff, an insurance carrier with whom the employer was insured against liability, defendant's plea of *res judicata* was based on these facts.

*Held:* That the present suit was not barred, as the employer had no right of recovery against the defendant for personal injury done to his employee, his former right of action for such injury being by virtue of the insurance carrier's assumption of the liability of the employer to the employee vested in the insurance carrier.

7. FORMER ADJUDICATION OR RES ADJUDICATA—*Different Cause of Action— Different Parties.*—A plea of *res judicata* is of no effect where the cause of action is different and where the plaintiff was not a party to the action wherein the judgment relied on as *res judicata* was rendered.

8. DAMAGES—*Personal Injury Cases—Medical and Hospital Expenses—Necessity of Specially Pleading such Expenses.*—Where in an action for personal injuries the allegations in the declaration show that the injuries were severe, and that medicines and hospital treatment were reasonably necessary consequences of the injuries, it is not necessary to plead specially such damages. If the defendant desires more detailed information, he can demand it in a bill of particulars.

9. CROSSINGS—*Instructions—Assumption of Facts—Assumption that Defendant was Negligent in the Maintenance of its Track and Roadbed.*—Where an instruction simply stated that the defendant's failure to maintain its railroad track and roadbed, where the same crossed a public highway, in a reasonably safe condition would of itself be negligence, but did not state, as a matter of fact, that the track and roadbed were actually in a bad condition, the instruction is not open to the objection that it assumed that the defendant was negligent in the maintenance of its track and roadbed, and this was especially true in the instant case when the instruction was read in connection with the one immediately preceding it.

10. NEGLIGENCE—*Contributory Negligence—Instructions—Necessity of Instruction on Contributory Negligence—Injuries the Proximate Result of Defendant's Negligence.*—Where an instruction for plaintiff directs a verdict for plaintiff if the jury finds defendant guilty of negligence, contains the proviso that the negligence of the defendant referred to must have been the proximate cause of the accident in order to warrant the verdict for the plaintiff, it submits the question of contributory negligence by implication, and is a proper instruction, provided the court gives for the defendant some instruction which fully and distinctly submits to the jury the theory of the defendant as to contributory negligence on the part of the plaintiff.

11. APPEAL AND ERROR—*Instructions—Error in the Instructions—Taking all Instructions Together.*—Where, taking all the instructions together, the jury could not possibly have misunderstood the issues submitted to them, and there has been a fair trial on the merits, error in the instruction does not justify a reversal.

12. NEGLIGENCE—*Contributory Negligence—Necessity of Instruction on Contributory Negligence—Conflict in Instructions.*—Where plaintiff's instructions plainly recognized, and those given for defendant repeated with clearness and emphasis, that the plaintiff must be free from contributory negligence to be entitled to a verdict, it is unreasonable to say that the jury might have been misled into imagining that the plaintiff could recover if his negligence contributed proximately to or concurred with that of the defendant, by an instruction for plaintiff that he was entitled to recover if the jury believed that defendant was negligent and that the injuries complained of were the proximate result of such negligence.

Error to a judgment of the Corporation Court of the city of Danville, in an action of trespass on the case. Judgment for plaintiff.    Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robert B. Tunstall* and *Henry C. Leigh,* for the plaintiff in error.

*J. T. Watson* and *A. M. Aiken,* for the defendant in error.

WEST, J., delivered the opinion of the court.

This is a writ of error to a judgment for $5,000.00 in favor of the United States Casualty Company, hereafter called the plaintiff, against the Southern Railway Company, hereafter called the defendant, for injuries negligently inflicted upon one S. E. Moorefield.

The defendant assigns error.

At the time of the accident S. E. Moorefield, an employee of L. D. Moorefield, doing business as Pure Food Bakery, acting within the scope of his employment, was driving an automobile truck, belonging to L. D. Moorefield, over the Henry street crossing of the defendant's railroad in the city of Danville, Virginia.    L. D. Moorefield carried a workman's compensation insurance policy with the plaintiff.   The plaintiff, as such insurance carrier, having assumed the liability of the employer therefor, paid S. E. Moorefield the compensation due under the policy on account of his injuries, and claims to be subrogated to the rights of the employer in the premises.

The truck approached the railroad track from the northeast and the train came from the north.    There

was a sharp curve to the right in the railroad, about 600 feet north of the crossing, and the view of the track and train was obscured beyond that point by an embankment around which the track curves. The view of a south-bound train to a traveller on Henry street, approaching the crossing from the north, was still further obstructed by a hedge of trees which prevented his seeing the train until near the track.

For the plaintiff, the evidence tends to prove that the train approached the crossing at a speed of twenty miles an hour, in violation of the ordinance of the city of Danville, which limits its speed to eight miles an hour; that the train was made up of eight or ten freight cars, mostly empties, and ran its full length after the collision with the truck before the engineer could stop it by applying the emergency brakes; that the defendant had failed to keep its track and roadbed, where the same crosses Henry street, in a reasonably safe condition for the safe and speedy passage of traffic thereover; that because of the obstruction to his view, the driver could not see up the track to his right until he was eighteen feet from the north rail; that he then looked and not being able to discover the approaching train, proceeded; that the train was not in sight when the truck went on the north rail; that he had to give attention to his car, in order to make the front wheels miss the ends of the ties (which were protruding above the road), and "jump the rail;" that when the wheels dropped over the rail his engine choked down; that he then for the first time heard the roar of the train and saw the smokestack over the crest of the embankment as the train came around the curve; that he, assuming the train was not exceeding the speed limit of eight miles an hour, put his foot on the starter to start the car, but before he could get it to move the train ran into and demolished the truck and

seriously and permanently injured the driver; that, had the crossing been reasonably safe and smooth, the truck would have passed over the track in safety before the train could have reached the point of the collision; that if the train had observed the speed limit, the driver could have started the truck and driven it in safety from the danger zone; that the driver was not guilty of any contributory negligence; and that the negligence of the defendant in running its train at an unlawful rate of speed, in not keeping a proper lookout for and in failing to keep the crossing in a reasonably safe condition, was the efficient and proximate cause of the driver's injuries.

On the other hand, for the defendant, the evidence tends to prove that the train was not running over eight miles an hour; that the street and track bed at the crossing were not in a bad condition; that the driver was guilty of negligence; and that the defendant cannot be held liable because entirely free from negligence.

The evidence being in conflict, the defendant's negligence and the plaintiff's contributory negligence were questions of fact for the jury, and their finding is conclusive, unless some prejudicial error was committed on the trial.

The defendant relies upon nine assignments of error.

The first relates to the action of the court in rejecting the defendant's plea of *res judicata.* The seventh is the giving of instruction No. 10 for the plaintiff. These two will be considered together.

Subsequent to the time at which S. E. Moorefield elected to accept the benefits of the workman's compensation act and had been receiving compensation thereunder from the casualty company, his employer, L. D. Moorefield, instituted suit against the Southern Railway Company to recover damages done his auto-

mobile truck, and the other property therein contained, by the collision. This suit was tried on its merits and decided adversely to the plaintiff. The defendant's plea of *res judicata* was based on the foregoing facts.

These assignments involve a construction of section 12 of the Virginia workman's compensation act, as amended (Acts 1920, page 256). Instruction No. 10 reads as follows:

"The court further instructs you that where an employer is insured against liability for injuries to its employees by an insurance carrier, and such insurance carrier shall have assumed the liability of such employer for compensation to his employees for injuries received in any given case, such insurance carrier, by virtue of such assumption of liability and by operation of law, thereupon becomes subrogated to all the rights of the employee in the particular case, and may enforce such rights in its own name against the person or corporation responsible for the injuries. If you believe from the evidence in this case that the United States Casualty Company, the plaintiff, as casualty insurance carrier for L. D. Moorefield, has assumed the agreed liability as aforesaid of the said L. D. Moorefield to S. E. Moorefield on account of the alleged injuries of the said S. E. Moorefield as described in the declaration in this cause, the court instructs you that by virtue of such assumption of liability the said United States Casualty Company thereby becomes legally subrogated to all of the rights of the said S. E. Moorefield, on account of his alleged injuries, against the Southern Railway Company, and the said insurance company thereby becomes entitled to bring any action against the said Southern Railway Company for the damages suffered by the said S. E. Moorefield, which the said S. E. Moorefield could have himself brought. The remaining instruc-

16

tions which I shall give you for the plaintiff are to be taken in the light of this instruction, in that you must first find, as a matter of fact, the existence of the legal subrogation herein described in favor of the United States Casualty Company as a first essential to the defendant's liability in this action."

[1] Under section 12, in the original act (Acts 1918, page 640) the employee to whom compensation was paid for personal injuries was debarred from pursuing all other rights and remedies on account of such injuries. Under this section, in the amendatory act, it is clear that upon the making of a lawful claim by the employee against his employer, the employer, by operation of law, becomes the assignee of any right to recover damages which the injured employee, or his personal representative, may have against any other party for such injury or death; and such employer is subrogated to such right of his employee and may enforce the same in his own name, or in the name of the employee.

[2-5] The amended section further provides that where an employer is insured against liability with an insurance carrier and such insurance carrier shall have paid any compensation for which the employer is liable, or shall have assumed the liability of the employer therefor, the insurance carrier shall be subrogated to all the rights and duties of the employer, and may enforce such rights in its own name, or in the name of the injured employee, or his personal representative.

The act further provides that "nothing herein shall be construed as conferring upon any insurance carrier any other or further rights than those existing in the employer at the time of the injury to his employee, anything in the policy of insurance to the contrary notwithstanding." Acts 1920, page 257.

We dissent from the contention of the defendant that under the provision of the statute just quoted the employer, at the time of the injury to the employee, had no rights which could be asserted and that, therefore, the plaintiff here is undertaking to assert a right not vested in it by statute. When the entire statute is read as a whole, it is clear that by the language quoted the legislature simply intended to limit the insurance carrier to its subrogated rights formerly vested in the employer, irrespective of any provision of the policy of insurance, which might seem to give to such carrier any other or further rights. An amendment to a statute should always be construed to mean something, rather than nothing. If the construction contended for be adopted the result would be to practically annul that portion of the statute which was clearly intended to give relief, by subrogation, to insurance carriers. At the time of the injury to the employee, the employer had the right, upon the making of a lawful claim by the employee against the employer for compensation under the act, to recover such damages as the injured employee might recover against any other party, for such damages. Upon the making of such claim, the employer's rights, as assignee of the employee, relate back and are the same as those of the employee at the time of the injury.

[6] When L. D. Moorefield brought suit against the defendant, he had no right of recovery against it for personal injury done his employee. His former right of action for such injury was, by virtue of the casualty company's assumption of the liability of the employer to the employee, vested in the casualty company. He could not, therefore, include in his suit for damages to the automobile and contents, a claim for personal injuries to his employee.

[7] A plea of *res judicata* is of no effect where the cause of action is different and where the plaintiff was not a party to the action wherein the judgment relied on as *res judicata* was rendered. *Elder's Ex'or* v. *Harris,* 76 Va. 187. Instruction No. 10 correctly states the law. We find no merit in these assignments.

The second assignment is that the court improperly allowed the plaintiff to prove the amounts expended for doctor's bills, medical and hospital bills, without specially pleading them. The amended declaration contained the following allegation with respect to damages: "* * and the driver thrown from the said automobile and greatly injured and bruised, as a consequence of which said driver was confined to the hospital and unable to work for a period of eleven weeks, also permanently injured, and is now unable to perform the work which he was capable and accustomed to perform before such injury, and was caused permanent physical injury, as well as great pain, suffering and mental anguish."

[8] The question raised is of first impression in this jurisdiction, and the authorities elsewhere are conflicting. Where the allegations in the declaration show, as in the instant case, that the employee's injuries were severe and that medicines and hospital treatment were reasonably necessary consequences of the injuries, according to the better rule, it is not necessary to plead specially damages of this character. If the defendant desires more detailed information he can demand it in a bill of particulars. This assignment is without merit.

[9] The third assignment is to the granting of plaintiff's instruction No. 3. The complaint is that it assumes that the defendant was negligent in the maintenance of its railroad track and roadbed, and tells the

jury such was the case. We do not think the objection is well taken. The instruction simply states that the defendant's failure to maintain its railroad track and roadbed, where the same crosses the public highway, in a reasonably safe condition would of itself be negligence, but does not state, as a matter of fact, that the track and roadbed were actually in a bad condition. When this instruction is read along with instruction No. 2, which immediately precedes it, and refers to the same subject, we are satisfied the defendant was not prejudiced by the giving of instruction No. 3.

The remaining assignments of error relate to the action of the court in granting four certain other instructions on motion of the plaintiff.

The court granted twenty-five instructions, eleven on motion of the plaintiff and fourteen on motion of the defendant. We have carefully scrutinized each of them and they are exceedingly favorable to the defendant, and presented to the jury every theory of its defense. When the instructions are all read together, as they should be, we find no harmful error in them.

The defendant insists, with great confidence, that the court erred in giving instruction No. 4, which reads as follows:

"The court further instructs you that it is the duty of a railway company, in the operation of its trains, to so manage and control them, or to cause the same to be done, with such care as not to inflict injury, damage or loss through their negligent operation or control, to the person or property of others, when such person is lawfully passing over its tracks; and if you believe the injuries complained of in this suit were the proximate result of the failure of the defendant company, or its employees, in the running of its train, to exercise such care, in the particulars set forth in the bill of particulars

filed in this case, with respect to the person suffering such injuries, while such person was lawfully passing over its track, it would be your duty to find for the plaintiff.''

[10] It is true that this instruction has been condemned by this court in *Atlantic Coast Line R. Co.* v. *Caple*, 110 Va. 518, 66 S. E. 855, but we are of the opinion that the doctrine on the subject, as applied in *Va. Ry. & Power Co.* v. *Smith*, 129 Va. 269, 277, 105 S. E. 532, and *C. & O. Ry. Co.* v. *Gayle*, 132 Va. 433, 436-8, 112 S. E. 785, is applicable in the instant case, and that, considering all the instructions together, it cannot be said that it is at all probable that the jury was misled by the giving of instruction No. 4. If the giving of this instruction was error, it was harmless.

None of the Virginia cases referred to in *A. C. L. R. Co.* v. *Caple, supra,* involves an instruction containing the requirement that the negligence of the defendant referred to must have been the *proximate cause* of the accident in order to warrant the verdict for the plaintiff mentioned in the instruction. The opinion in the *Caple Case* does, on its face, class such an instruction along with instructions directing a verdict for the plaintiff, which contains no such requirement; but the opinion does this without any discussion of the subject, and we think went too far in so doing. In no subsequent case cited by the plaintiff in error has this court so held.

The doctrine laid down by the court in *Virginian Ry. Co.* v. *Bell*, 115 Va. 429, 79 S. E. 396, Ann. Cas. 1915 A, 804, seems to be preferable. That case holds, in substance, that when the instruction for the plaintiff contains the requirement just referred to, it submits the question of contributory negligence ''by implication,'' and is a proper instruction, provided the court gives for the defendant some instruction which fully and dis-

tinctly submits to the jury the theory of the defendant as to contributory negligence on the part of the plaintiff. This was done in the instant case by the giving by the court of eight instructions, each of which concluded with the direction either that the plaintiff could not recover, or that the jury must find for the defendant.

[11] We think the following, said by Judge Prentis in speaking for the court in the *Gayle Case, supra,* applies with equal force in the instant case: "Taking all of these instructions together, we conclude * * the jury could not possibly have misunderstood the issues submitted to them, that there has been a fair trial on the merits, and that such error" (if there was any in giving the instruction in question) "does not justify a reversal."

[12] On the question of a conflict between instruction No. 4, given for the plaintiff, and the eight instructions given for the defendant, the opinion of the court, by Kelly, President, in *Va. Ry. & P. Co.* v. *Smith, supra* (129 Va. 277, 105 S. E. 532), dealing with the rule on the subject of such conflict, is peculiarly applicable in the instant case, namely: "* * * it is quite possible to apply the rule unreasonably. We are inclined to think it may have been so applied in some of the antecedent Virginia cases, and we feel that it would be so applied in this case if we held the instruction in question sufficiently faulty to constitute reversible error. We have here a case in which * * the plaintiff's instructions plainly recognized, and * * those given for the defendant repeated with clearness and emphasis that the plaintiff must be free from contributory negligence to be entitled to a verdict. * * Under these circumstances it would be unreasonable to say that the jury might have been misled by instruction No. 3 into imagining that the plaintiff could recover if its negligence

contributed proximately · to, or concurred with that of, the defendant."

For the foregoing reasons, we find no reversible error in the rulings of the trial court, and the judgment will be affirmed.

*Affirmed.*