COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff,[*] Causey and White
Argued at Richmond, Virginia


WILLIAM E. BUTCHER, ET AL.
                                                MEMORANDUM OPINION[**] BY
v.        Record No. 1995-23-2                  JUDGE GLEN A. HUFF
                                                JANUARY 14, 2025
GENERAL R.V. CENTER, INC., ET AL.


FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

James B. Feinman (Law Office of James B. Feinman, on briefs), for
appellants.

Danielle D. Giroux (Brian M. Touna; Harman, Claytor, Corrigan &
Willman, on brief), for appellees.


In 2022, William and Traci Butcher ("appellants") sued General R.V. Center, Inc., and

Keystone RV Company (collectively, "appellees") seeking recovery for defects in a recreational

vehicle (RV) they had purchased.  Although the parties ultimately settled the underlying claim,

the trial court awarded appellants only some of their requested attorney fees, excluding the

portion of those fees incurred while litigating the issue of attorney fees.  Appellants challenge

that ruling on appeal.  Finding no error, this Court affirms the judgment below.

BACKGROUND

In September 2021, appellants bought an RV from appellees for nearly $80,000.  The

purchase was conditioned on the salesperson's promise that certain "structural problems" in the

---

[*] Judge Huff prepared and the Court adopted the opinion in this case prior to the effective
date of his retirement on December 31, 2024.

[**] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

RV—including "busted" plywood, broken trim, faulty caulking, a cracked sink, and peeling decals—"would be fixed." When appellants arrived to "take possession" of the RV, however, the identified problems had not been fixed, and the RV also "had an electrical problem . . . for the two fireplaces." Appellees promised they would order the parts to fix all problems, and appellants left with the RV.

As appellants were driving, they noticed that the RV "was pulling to the right." And after arriving at a campground, they learned that the RV's "slides would not slide out, the recliner was not working, and there were gaps in the seal where cold air was" entering the RV. On December 15, 2021, appellants returned the RV to appellees for service. An inspection revealed that the axles were uneven, so the RV was sent to Ohio for repairs. Months later, appellants were notified that the axles had been replaced, but that the remaining "structural malfunctions" were not yet repaired.

In February 2022, appellants hired an attorney regarding the ongoing issues with the RV. Appellees, through their own counsel, offered to repurchase the RV for $98,898; appellants' attorney countered at $112,156. When appellees refused the counteroffer, appellants sued them under the Virginia Consumer Protection Act, Code § 59.1-196, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. Appellants also advanced claims for contract recission and "revocation of acceptance" under Code § 8.2-608.[1] Among other things, appellants' complaint sought recovery of

---

[1] The Magnuson-Moss Warranty Act provides a cause of action for express and implied warranty claims under state law, by permitting

> a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, implied warranty, or service contract, [to] bring suit for damages and other legal and equitable relief . . . in any court of competent jurisdiction in any State or the District of Columbia.

15 U.S.C. § 2310(d)(1)(A). *See also Holmes v. LG Marion Corp.*, 258 Va. 473, 476 (1999) (holding that the trial court erred in striking plaintiff's claim under the Magnuson-Moss Warranty Act for a defective car, although the error was deemed harmless).

the original purchase price for the RV and attorney fees at $500 per hour or one-third of their total recovery, whichever was greater.

The parties negotiated for over a year, eventually signing a settlement agreement on May 2, 2023, under which appellees repurchased the RV for $106,500.[2] The settlement agreement acknowledged that appellants were the "prevailing parties" for the Magnuson-Moss Act claim and did not "release any claim" for attorney fees. Four months later, appellants moved the trial court to award them attorney fees based on the stipulation in the settlement agreement that they were the prevailing parties. Given the "considerable inflation" since they had filed suit, appellants further asked the trial court to amend the ad damnum clause of their original complaint to request "attorney fees in the amount of $550 per hour or one-third of the amount recovered."

The trial court held a hearing on the motion on October 20, 2023, at which appellants' counsel stated that he had been practicing law for about 40 years. His practice had focused on plaintiffs' tort litigation, including "lemon law and Magnuson-Moss Warranty Act litigation." He asserted that few attorneys litigated Magnuson-Moss cases because they are "complex" and involve litigation against big corporations with "excellent" attorneys. He then cited *O'Neil v. Chrysler Corp.*, 54 Va. Cir. 64, 65 (Loudoun Cnty. 2000), in which the Loudoun County Circuit Court described him as a "well known . . . specialist" in "lemon law" cases.

Appellants' counsel also introduced a time sheet listing his billed hours, beginning when he was hired in February 2022 and ending with the attorney fee hearing in October 2023. The time sheet indicated that he had billed a total of 74.20 hours; thus, at $550 per hour, his total fee request was $40,810. He further introduced orders from other federal and Virginia trial courts awarding

---

[2] The trial court admitted the settlement agreement's repurchase price "under seal." This appeal requires unsealing that fact "to resolve the issues raised by the parties." *Mintbrook Developers, LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022) (unsealing portions of the sealed record sua sponte, as necessary to resolve the appeal).

him attorney fees in similar cases without "deduct[ing] a single penny of the time" he "ask[ed] for." Finally, he asked for costs, including the filing fee, the court reporter's fee, and his hotel fees to stay nearby and argue the motion before the trial court.

Appellees countered that over $40,000 in attorney fees "for a case that was almost settled even before [appellants] filed suit" was "not objectively reasonable." To begin, they had made a $98,898 "repurchase offer . . . well before [appellants] ever filed the lawsuit[,]" which appellants unnecessarily rejected because they wanted to recover additional expenses "excluded by the warranty," such as "hotel and dining expenses" incurred while buying the RV. Then, in the months after appellants filed their complaint, appellees submitted numerous, increasing settlement offers, all of which included attorney fees. Appellants' counsel, however, refused "to discuss his fees" because he believed it would cause a conflict of interest with his clients.

Appellees emphasized that they had tried to prevent appellants from incurring unnecessary fees by not making a "single discovery request" or asking for depositions. Appellants, on the other hand, had needlessly extended litigation through delays "in providing documentation" supporting their claims. Appellees also questioned many of the entries on appellants' counsel's time sheet, noting that an associate attorney who billed at a different rate had handled "most of [the] negotiations" at the beginning of the case. On that point, appellants' counsel admitted that the associate had accounted for "no more than ten hours," billed at $250 per hour.

Lastly, appellees asserted that, within a few weeks of signing the settlement agreement, appellants' counsel had offered to settle the attorney fees portion of the matter for $20,000. Appellants objected to the trial court considering that offer, arguing that it was an inadmissible "compromise offer" under Virginia Rule of Evidence 2:408 and "should be given no weight" in the court's calculation of attorney fees. Notwithstanding that claim, appellants' attorney contended that he had reasonably incurred 19.43 additional hours of fees since making the $20,000 post-settlement

offer, which included the time spent in drafting the motions to litigate his fees. Appellants likewise objected to appellees' argument regarding the $98,898 pre-lawsuit settlement offer on the ground that it too was part of "settlement discussions" that the trial court could not consider. The trial court overruled the objection, noting that there was no jury and that the initial $98,898 offer would not be considered for "the necessity of the attorney[] fees." Rather, the court would consider it only to determine whether the "amount of time that was expended after" the original $98,898 offer "to get to" the ultimate $106,500 settlement was "a reasonable return on the investment."

Following argument by the parties, the trial court stated that it had considered "all of the evidence . . . including the original offer prior to suit, the ultimate settlement, the time [appellants' counsel had] spent," and the "reasonable" $500 hourly rate. The trial court first accounted for the ten hours billed by the associate attorney at $250 per hour, leaving 64.20 hours billed at $500 per hour. It then subtracted "the 19.43 hours" that appellants' attorney took "to come here to recover [his] fees[.]" Appellants' attorney objected, arguing that "the overwhelming law is that if a lawyer has to litigate his fees, he's entitled to be paid for it."

"Based on the facts and circumstances of this case," however, the trial court found that it was not a "reasonable expenditure" for appellants' attorney to spend nearly "20 hours at $500 an hour to try to recover . . . [attorney] fees" after the underlying issue was settled. On those determinations, the court awarded appellants a total of $24,885 in attorney fees plus costs. Appellants moved to reconsider that ruling; the trial court denied the motion. This appeal followed.

ANALYSIS

On appeal, appellants argue that they were entitled as a matter of law to the attorney fees incurred while litigating the issue of attorney fees. They rely primarily on *Denton v. Browntown Valley Associates, Inc.*, 294 Va. 76, 90 (2017), where the Supreme Court held that, when a "prevailing party is entitled to an award" of attorney fees, "the reasonableness of the award . . .

becomes an issue to be adjudicated," and the fees incurred while litigating that issue "are no different from those [incurred] while litigating any other issue on which it prevails." Appellants further contend that the trial court abused its discretion by considering the $98,898 pre-lawsuit settlement offer as a basis for determining whether the litigation hours were a "reasonable investment."[3]

I. Reasonableness of Attorney Fees (Assignments of Error I and III-V)

This Court reviews an attorney fee award "for abuse of discretion." *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 252 (2017).

> A trial court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Mills v. Mills*, 77 Va. App. 543, 564 (2023) (quoting *Lambert*, 293 Va. at 253).

"[W]hen a litigant seeks to pass along to an adversary the cost of attorney's fees, whether pursuant to a statute or a contract, a reviewing court must satisfy itself that the fees sought are reasonable." *Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 334 (2020). It is the "prevailing party," however, who, despite being "entitled by law to an award of attorney

---

[3] Appellants' third assignment of error also alleges that the trial court erred "by giving significant weight" to their offer to settle the attorney fee issue for $20,000. Although the background section of appellants' opening brief mentions the $20,000 settlement offer, it presents no argument on that specific issue. Instead, appellants argue only that (1) they were entitled to fees incurred in litigating attorney fees, and the court erred by failing to give weight to the Supreme Court's opinion in *Denton*, and (2) the trial court erred by admitting and considering the *$98,898 pre-litigation offer* as evidence. Because the narrow arguments presented in appellants' opening brief do not mention the *$20,000 attorney fee settlement offer*, any claim regarding that issue is waived. *See* Rule 5A:20(c); *see also Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 580 (2017) (declining to consider an argument not included in the opening brief and raised for the first time in a reply brief).

fees,"[4] bears "the burden of proving 'that the requested fees are reasonable and that they are necessary.'" *Mills*, 77 Va. App. at 565 (quoting *Moncrieffe v. Deno*, 76 Va. App. 488, 497 (2023)); *see also Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998) ("The party claiming the legal fees has the burden of proving . . . that the fees are reasonable and were necessary."). The Supreme Court has "identified seven non-exclusive factors for courts to consider when weighing the reasonableness of an amount of attorney fees":

> (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate.

*Denton*, 294 Va. at 88 (quoting *Lambert*, 293 Va. at 254).

The trial court, however, "is not required to consider all of the factors . . . in every situation," and a "'particular factor[] may have added or lessened significance depending on the circumstances of each case.'" *Portsmouth 2175 Elmhurst, LLC*, 298 Va. at 334 (quoting *West Square, LLC v. Commc'n Techs.*, 274 Va. 425, 434 (2007)). Furthermore, "mathematical certainty" in awarding attorney fees is "impossible" and "'an illusory goal.'" *Mills*, 77 Va. App. at 568-69 (quoting *Brandau v. Brandau*, 52 Va. App. 632, 643 (2008)). To that end, a court is not required to "pore over pages and pages of billing records to evaluate the reasonableness of each line-item." *Lambert*, 293 Va. at 257. Still, "[c]ircuit court litigation comes at a price, sometimes a heavy price." *Id.* at 258. "There is an initial pleading, or an answer to one, to research, write, and file. Discovery may be propounded and must be answered. . . . There may

---

[4] Appellees do not dispute that appellants are entitled to attorney fees as a matter of law. *See* 15 U.S.C. § 2310(d)(2) (providing that a "prevailing customer" may "recover as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the court").

be pre-trial motions to research, write, and argue.  And then there is the trial itself, if the case makes it that far." *Id.*

Each of the various tasks associated with litigation "requires an attorney's time and, provided the time is reasonable in light of his or her experience and the nature of the case, he or she may expect compensation for that time at a reasonable rate." *Id.*  But in all cases, the court must "assess the necessity of [the various] tasks, the time spent on them, and the rate charged 'under the facts and circumstances of the particular case.'" *Id.* (quoting *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1994)).  Accordingly, a court may "deduct from the award any fees and expenses associated with claims and defenses the court views to be frivolous, spurious, or unnecessary." *Dewberry & Davis, Inc. v. C3NS, Inc.*, 284 Va. 485, 496 (2012).

Here, the record demonstrates that appellees engaged in minimal litigation before the attorney fees issue arose, propounding no discovery requests and choosing not to pursue motions to dismiss or transfer venue.  Indeed, after the initial complaint, the next pleading filed by appellants was their motion for attorney fees and memorandum in support of such request.  *See Lambert*, 293 Va. at 257 (noting that the amount of attorney fees incurred is often correlated to the "vigor" of the opposing party's litigation).  Nevertheless, before filing that motion, appellants' counsel billed over 50 hours—10 of which was his associate's time—for tasks such as reviewing appellees' pleadings, corresponding with his clients and opposing counsel, and negotiating settlement.  After considering all the evidence before it, the trial court found that those hours were reasonable and necessary but that the additional 19.43 hours at $500 per hour to recover attorney fees for an already settled case were not.  *See Mills*, 77 Va. App. at 568 (holding that "a fee request 'should not result in a second major litigation'" (quoting *Brandau*, 52 Va. App. at 643)).

Notwithstanding the above, appellants insist that the trial court disregarded the Supreme Court's opinion in *Denton*, which acknowledged that attorney fees "the prevailing party incurs while litigating the issue of attorney's fees are no different from those it incurs while litigating any other issue on which it prevails." 294 Va. at 90. Appellants argue that, by excluding fees incurred in litigating the attorney fees issue, the trial court credited an "irrelevant or improper factor." That argument, however, mischaracterizes the trial court's holding. The court did not decline to award the additional 19.43 hours *because* they were incurred in litigating the fee issue. Rather, the trial court held that portion of the incurred fees not reasonable "based on the facts and circumstances of this case." In other words, the trial court found that appellants had failed to meet their burden of proving that the fees associated with the litigation to recover attorney fees were "reasonable and necessary" under the specific circumstances of this case. *Mills*, 77 Va. App. at 565.

Undeterred, appellants next contend that there were "no other 'facts and circumstances of this case'" on which the trial court could base its judgment and that the "only grounds articulated or expressed by the trial court itself was the fact 'basically, you spent 20 hours at $500 an hour to try to recover your fees.'" Appellants cite an unpublished opinion from the United States District Court of the Eastern District of Virginia for the proposition that the trial court was required to "set forth clearly [its] findings of fact for fee awards" so that this Court will have an adequate basis for reviewing whether the trial court abused its discretion. In the Commonwealth, however, "[t]here is no general requirement that trial courts must state for the record the reasons underlying their decisions." *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015). Moreover, as noted above, the record demonstrates that the trial court looked at the entire case, including all the various phases of the litigation, and concluded that appellants had reasonably incurred over

- 9 -

50 hours of attorney fees to litigate a case involving few filings and court appearances. Appellants' arguments to the contrary fail to show any abuse of discretion in that judgment.

II. Pre-lawsuit Settlement Offer (Assignment of Error II)

"This Court reviews the circuit court's decisions regarding the admissibility of evidence for abuse of discretion." *Jones v. Commonwealth*, 71 Va. App. 70, 85 (2019) (citing *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "A discretionary decision in which 'the court has a range of choice' will not be reversed 'as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 86 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Calokoh v. Commonwealth*, 76 Va. App. 717, 734 (2023) (quoting *Kenner v. Commonwealth*, 71 Va. App. 279, 289 (2019)).

Appellants argue that the trial court erred by admitting and considering evidence of the pre-lawsuit settlement offer of $98,898. They criticize the trial court's statement that it considered the offer to determine whether the "amount of time that was expended after" the offer "to get to" the ultimate settlement was "a reasonable return on the investment." That statement, appellants maintain, demonstrates that the court abused its discretion because, under federal law, a fee award cannot be limited to a percentage of the underlying recovery. They also emphasize the underlying policy of the Magnuson-Moss Warranty Act to encourage beneficial litigation involving inexpensive consumer products, which often results in fee awards exceeding the consumer's recovery.

Evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise [a] claim" "is not admissible in a civil case—either to prove or disprove the validity or amount of a disputed claim, or to impeach by a prior inconsistent statement or by contradiction." Va. R. Evid. 2:408(a)(1). A trial court may,

- 10 -

however, "admit such evidence for *another purpose*, such as proving a witness's bias or prejudice, or negating a contention of undue delay."  Va. R. Evid. 2:408(b) (emphasis added).  Such evidence can be admissible, for example, to help the trial court interpret a word in a contract.  *Stroud v. Stroud*, 49 Va. App. 359, 366 (2007).

Moreover, it is well-established that a trial court may generally inquire into settlement negotiations, as doing so "can be helpful in encouraging an early end to litigation."  *Hurt v. Newcomb*, 242 Va. 36, 40 (1991).  Indeed, Rule 2:408 does not generally exclude evidence of settlement negotiations for *all* purposes.  Rather, it excludes such evidence only for specifically identified purposes—to demonstrate "the validity or amount of a disputed claim, or to impeach by a prior inconsistent statement or by contradiction"—while simultaneously providing that a court may admit the evidence for "another purpose."  Va. R. Evid. 2:408(a) and (b).

Applied here, Rule 2:408(a) would plainly prohibit the admission of the initial settlement offer into evidence to demonstrate "the validity or amount" of appellants' claim under the Magnuson-Moss Warranty Act.  The trial court, however, did not admit the settlement offer for that purpose as the underlying claim was settled before the hearing on attorney fees.  Rather, the court admitted the settlement offer to help evaluate the reasonableness of appellants' attorney fees, and even then, the trial court explicitly held that it was not considering the amount of the offer as probative of "the necessity of the attorney's fees."  *See Groves v. Commonwealth*, 50 Va. App. 57, 61 (2007) (noting that a judgment "comes to us on appeal with a presumption that the law was correctly applied to the facts").  In doing so, the trial court considered the offer only for its relevance regarding "the value of the services to the client" and "the results obtained"— two of the factors the court must consider when assessing the reasonableness of attorney fees.  *Denton*, 294 Va. at 88.  Because Rule 2:408(a) did not prohibit the admission of the settlement

offer for those purposes, appellants have failed to demonstrate that the trial court abused its discretion.

But even if the trial court's ruling was an abuse of discretion, any such error was harmless. "[E]videntiary errors are subject to non-constitutional harmless error review." *Jones v. Commonwealth*, 71 Va. App. 70, 91 (2019). "Non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Id.* (alteration in original) (quoting *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017)). *See also* Code § 8.01-678. That is, non-constitutional error "is harmless if the reviewing court can be sure that the error did not influence the [fact finder] and only had a slight effect." *Lawrence v. Commonwealth*, 279 Va. 490, 497 (2010).

"The harmless-error check on judicial power has never been a begrudged limitation, but rather one 'favored' by Virginia courts because it grows out of the 'imperative demands of common sense.'" *Commonwealth v. White*, 293 Va. 411, 420 (2017) (first quoting *Windsor v. Carlton*, 136 Va. 652, 655 (1923); and then quoting *Commonwealth v. Proffitt*, 292 Va. 626, 641 (2016)). "Harmless error consequently has been 'deeply embedded in our jurisprudence.'" *Id.* (quoting *Gilland v. Commonwealth*, 184 Va. 223, 235 (1945)). "Thus, it is 'the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless' lest they 'retreat from their responsibility, becoming instead "impregnable citadels of technicality."'" *Id.* (quoting *United States v. Hasting*, 461 U.S. 499, 509 (1983)).

As noted above, the trial court here admitted the initial settlement offer for the limited purpose of evaluating whether the "amount of [attorney] time that was expended after" the pre-lawsuit settlement offer "to get to" the ultimate settlement of the underlying claim was "a reasonable return on the investment." The trial court then awarded appellants *all* of the attorney

fees they incurred "to get to" the ultimate settlement of the underlying claim. The only fees excluded were those incurred while litigating the issue of attorney fees, and the trial court did not consider the pre-lawsuit settlement offer as probative of the reasonableness of that portion of the fees. Therefore, even if the trial court erred by admitting the initial settlement offer into evidence, that error did not influence its decision to not award the attorney fees incurred while litigating the issue of fees. Accordingly, any such error was harmless.[5]

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[5] Appellees' request to dismiss appellants' fifth assignment of error under Rule 5A:20(c)(2) is denied, as that assignment of error adequately identifies the ruling challenged on appeal. *See Findlay v. Commonwealth*, 287 Va. 111, 116 (2014) (holding that an assignment of error was not insufficient when it pointed "to a specific . . . ruling of the trial court" that appellant "believe[d] to be in error").